UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Dennis Reeves, on behalf of himself                      Civil No. 08-4866 (PAM/FLN)
and all others similarly situated,

                    Plaintiff,

v.                                                       **MEMORANDUM AND ORDER**

Tighorn Financial Service, L.L.C,
d/b/a New Horizons Financial
Services, Total Card, Inc.,
Monterey County Bank, and
G. Shaffer, individually,

                    Defendants.

_____

        This matter is before the Court on Defendants' Motions for Summary Judgment,

Plaintiff's Motion for Class Certification, Defendants' Motion for Leave to File, and

Plaintiff's Motion to Strike.

**BACKGROUND**

        In June and July 2008, Plaintiff Dennis Reeves received three solicitation letters from

a company called "New Horizons."  These letters offered Reeves a "voucher" that would

forgive a part of Reeves's alleged consumer debt, along with a credit card with a credit limit

of the amount of the remaining balance of his consumer debt, plus a "first-year annual fee"

of $59.  However, Reeves's consumer debt was uncollectible, because he defaulted on that

debt in approximately 1990 and any collection action would be time-barred under the

relevant statute of limitations.  Thus, the "offer" was in fact a way for New Horizons and its

affiliates, Defendants here, to make money from a debt that they could not otherwise legally collect, in effect by turning old uncollectible debt into new debt collectible by any means under the law.

Shortly after receiving the solicitations, Reeves contacted his current counsel, the Consumer Justice Center.  Reeves also called the 800 number on the solicitation letters and visited the website listed on the letters but did not ever sign up for New Horizon's "offer." According to Reeves, 88 Minnesota citizens were deceived by this solicitation into reaffirming stale debt.  He brings claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692a et seq., and the Minnesota Deceptive Trade Practices Act ("DTPA"), Minn. Stat. § 325D.44 et seq.

Defendants are New Horizons Financial Services ("New Horizons"), whose name is prominently displayed on all the solicitations; Tighorn Financial Services ("Tighorn"), which owned the New Horizons name; Gordon Shaffer, one of the three principals of Tighorn and whose signature appears on the solicitations; Monterey County Bank ("MCB"), the bank that backed the New Horizons credit cards; and Total Card, Inc., a debt collection agency that provided telemarketing and other services in support of the credit card program.  Reeves seeks to maintain this lawsuit as a class action on behalf of Minnesota consumers.

**DISCUSSION**

**A.     Motion for Summary Judgment**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The Court

must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.  Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996).  However, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action."  Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  Id. at 323; Enter. Bank, 92 F.3d at 747.  A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

## A.     Tighorn/Shaffer's Untimely Motion for Summary Judgment

As stated at the hearing, Defendants' motion for leave to file an untimely motion for summary judgment is denied.  However, the Court will consider MCB and Total Card's timely Motion for Summary Judgment as if Tighorn and Shaffer joined in the arguments presented in the Motion, to the extent that those arguments are not inconsistent with arguments Tighorn and Shaffer would make about their own liability.

**B.      MCB and Total Card's Motion for Summary Judgment**

1.      <u>Primary Liability</u>

MCB and Total Card argue that they cannot be liable under the FDCPA for several reasons.  First, they contend that Reeves had no contact with MCB at all and that his contacts with Total Card—consisting of his phone calls to the 800 number and his visit to the website, both of which were staffed/serviced by Total Card—are not alleged to have violated any laws.  Second, they assert that Tighorn and Shaffer are solely liable for any violations because the relevant contracts assign legal compliance duties solely to Tighorn.  Finally, they contend that they are not "debt collectors" within the meaning of the FDCPA.

The second contention has no merit.  Defendants offer absolutely no legal authority for the proposition that an entity can abdicate compliance with the FDCPA by contract.  If MCB and Total Card are at all responsible for the letters, and if the letters violate the FDCPA, then a contract between MCB and Tighorn assigning FDCPA compliance duties to Tighorn cannot relieve MCB of its independent duties under that statute.

Thus, the Motion turns on whether MCB and Total Card are responsible for the letters and any alleged FDCPA violations in the letters.  According to MCB and Total Card, Tighorn created the letters with the help of a company called Credit America.  Credit America is not involved in this lawsuit.  Tighorn engaged MCB as the bank that would issue the credit cards; MCB in turn hired Total Card.  MCB and Total Card claim that they had no part in drafting or mailing the letters, although MCB does admit that Tighorn consulted MCB before sending the letters.  As its contract with Tighorn required, MCB approved the text of

4

the letters, telling Tighorn that if Tighorn's attorney approved the letters, then MCB also approved the letters.  In addition, the letters were to contain Total Card's debt collector license number, although a typographical error led to the letters actually containing the license number for another of Credit America's clients, Jefferson Capital Systems, LLC.  No one disputes that Jefferson Capital had no role in the New Horizons program and that the inclusion of its license number on the letters was an error, although there is a dispute as to the import of that error.

Shortly before the hearing on the Motion for Summary Judgment, Reeves filed a Motion to Supplement the Record to include late-filed discovery.  Reeves contends that Tighorn produced more than 2,400 pages of evidence on April 16, 2010, after Reeves's response in opposition to summary judgment was due.  According to Reeves, this recently produced discovery refutes MCB and Total Card's claims that they are not responsible for the contents of the letters.

Even without this evidence, however, the record before the Court taken in the light most favorable to Reeves shows that questions of fact exist as to whether MCB and Total Card were at all responsible for the letters.  Thus, although the Court will grant the Motion to Supplement to ensure that the record is complete, the Court will deny MCB and Total Card's Motion for Summary Judgment on this issue.

2.    Debt Collectors

MCB and Total Card claim that they are not "debt collectors" within the meaning of the FDCPA and thus cannot be liable for any alleged violations of the FDCPA.  A debt collector is

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6).

There is no dispute that Total Card is a registered debt collection agency in the State of Minnesota.  However, Total Card claims that in this particular scheme, Tighorn is the debt collector for Reeves's debt, not Total Card, because Total Card merely provided services to MCB.  If the consumer decided to sign up for New Horizons' credit card and then defaulted on that new debt, Total Card would then act as a debt collector for the purposes of that new debt.  But with respect to the old debt, Total Card contends that it was not a debt collector within the meaning of the statute.

In support of this argument, Defendants rely primarily on Trull v. Lason Systems, Inc., 982 F. Supp. 600 (N.D. Ill. 1997).  The facts of Trull are wholly distinguishable from the facts here, however.  In Trull, the plaintiff sought to hold a company that provided mailing services for a debt collector's mailings liable under the FDCPA.  There was no evidence that the mailing company did anything more than perform a mail merge using the text of the letters and an address list, both of which were generated by the debt collector.  The

court found, not surprisingly, that the mailing company was not a debt collector within the meaning of the FDCPA. Id. at 609.

Trull is instructive, however. The Trull court noted that the decision as to whether a particular defendant is a debt collector under the FDCPA depends on an analysis of the defendant's activities in the particular case before the court. Id. at 605 (citing Jenkins v. Heintz, 25 F.3d 536, 538-39 (7th Cir.1994)). "[T]he question is whether the 'principal purpose' of the defendant's work is 'the collection of debt.'" Id. (quoting Jenkins, 25 F.3d at 539). If the defendant's activities are "just another method of 'attempt[ing] to collect a debt,'" then that defendant is a debt collector under the FDCPA. Id. (quoting Jenkins, 25, F.3d at 539).

Here, the evidence taken in the light most favorable to Reeves shows that both MCB and Total Card's involvement in the New Horizons program was for the purposes of collecting a debt. It may be that the debt was one owed to Tighorn, but MCB and Total Card's initial activities were calculated to collect that debt. There is at least a question of fact as to whether MCB and Total Card are debt collectors for the purposes of the FDCPA, and the Motion on this point fails.

3.    Applicability of FDCPA to Reeves's Debt

Defendants also argue that Reeves's debt is not covered by the FDCPA. The FDCPA is limited to debt "primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5). Defendants contend that Reeves testified that he used his defaulted credit card primarily to travel for business. The deposition, however, is much more equivocal than

7

Defendants make it out to be.  Reeves initially testified that he could not recall any purchases he made on the credit card.  (Myers Aff. Ex. 6 (Reeves Dep.) at 22.)  He then speculated that he "probably" made purchases related to travel for his job, and also for "normal household expenses."  (Id. at 22-23.)  When asked whether he thought he used the card "more for travel expenses for your job or household stuff," Reeves answered, "I would say travel."  (Id. at 23.)

This evidence does not establish unequivocally that the FDCPA does not apply to Reeves's debt.  Without some other evidence, such as the statements from this credit card showing only business charges or similar evidence, there is an issue of fact as to whether the debt was "primarily for personal, family, or household purposes" as the FDCPA requires.  The Motion on this point is denied.

4.    Violation of FDCPA

Reeves claims four distinct violations of the FDCPA. First, he contends that the Defendants falsely represented that they were licensed debt collectors in violation of 15 U.S.C. §§ 1692e and 1692e(10).  Next, he argues that Defendants failed to provide consumers with their true identities in violation of §§ 1692d, 1692e, 1692e(14), and 1692f. Third, Reeves takes issue with Defendants' statements in the letters that they would report Reeves's debt to the credit-reporting agencies as paid.  He contends that these statements were illusory promises because Defendants knew that the debt was no longer included in Reeves's credit report and was beyond the credit reporting period, and thus Defendants had no intention of making any report about the debt to a credit-reporting agency.  Reeves

8

contends that these statements thus violated §§ 1692e, 1692e(2), 1692e(8), 1692e(10), and 1692f. Finally, Reeves claims that Defendants' statement that, if Reeves failed to participate in the New Horizons program, "the full amount of the old debt will remain due," gave a false representation as to the true character or legal status of Reeves's debt in violation of §§ 1692e, 1692e(2),1692e(8), 1692e(10), and 1692f. When evaluating debt-collection letters, the Court must apply an "unsophisticated consumer" standard. Duffy v. Landberg, 215 F.3d 871, 873 (8th Cir. 2000).

a.      **Representation regarding debt-collection licenses**

Reeves contends that MCB violated the FDCPA by representing that it was a licensed debt collector when it was not licensed. MCB and Total Card describe this claim as taking issue with the fact that the letters listed an incorrect license number, but Reeves's claim is a bit different. He contends that it was deceptive and false to claim licensure at all because New Horizons and MCB, the two companies named in the letter, are not in fact licensed to collect debts in Minnesota. (3d Am. Compl. Exs. 1, 3, and 4 ("This collection agency is licensed by the Minnesota Department of Commerce.").) The only Minnesota-licensed company involved in the New Horizons program was Total Card.[1] However, as discussed previously, Defendants insist that Total Card was not a debt collector for the purposes of the New Horizons program. Thus, the statement regarding licensure is undisputedly false.

---

[1] Minnesota law requires all debt collectors doing business in Minnesota to have a collection agency license. Minn. Stat. § 332.33, subd. 1. The statute applies to "any person engaged in the business of collection for others," id. § 332.31, subd. 3, but does not define what "business of collection" means.

9

The FDCPA prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Courts are split as to whether any falsehood, no matter how immaterial, violates the FDCPA. For instance, the district court in <u>Radaj v. ARS National Services</u>, No. 05-C-0773, 2006 WL 2620394, at *3 (E.D. Wis. Sept. 12, 2006), found a debt collector's statement that it was licensed when it was not was a false statement prohibited under 1692e. The court noted that § 1692e "prohibit[s] <u>any</u> false statement, regardless of whether the statement is required by law, state or federal." <u>Id.</u> (emphasis in original).

In another case, however, the Seventh Circuit Court of Appeals stated, "If a statement would not mislead the unsophisticated consumer, it does not violate the FDCPA—even if it is false in some technical sense. For purposes of § 1692e, then, a statement isn't 'false' unless it would confuse the unsophisticated consumer." <u>Wahl v. Midland Credit Mgmt., Inc.</u>, 556 F.3d 643, 645-46 (7th Cir. 2009). The Eighth Circuit Court of Appeals has not addressed this specific issue.

Even if the FDCPA does not apply to false statements that are not misleading, the allegedly false statement here is not merely an innocuous statement. Rather, as the first subsection of § 1692e makes clear, false statements regarding government imprimatur are, almost by definition, statements capable of misleading the unsophisticated consumer. <u>See</u> 15 U.S.C. § 1692e(1) (prohibiting "[t]he false representation or implication that the debt collector is vouched for [by] the United States or any State . . . ."). A jury could certainly find that a statement that the debt collector has a state license is a statement that the debt

collector is "vouched for" by a state.  Thus, although the FCPA "was not meant to convert every violation of state debt collection law into a federal violation," <u>Carlson v. First Revenue Assur.</u>, 359 F.3d 1015, 1018 (8th Cir. 2004), the statement here is not merely a violation of state debt collection law.  A reasonable jury could find that this false statement implied that the New Horizons program was vouched for by the state of Minnesota.  Thus, Reeves has established a genuine issue of fact as to whether this statement violated the FDCPA.

> **b.   Defendants' true identities**

Reeves argues that the letters failed to disclose two of the parties to the debt-collection program: Tighorn and Total Card.  The phone number and website listed on the letters are maintained by Total Card, but Total Card's name nowhere appears.  Reeves contends that the failure to disclose these two companies violated §§ 1692d, 1692e, 1692e(14), and 1692f.

Some of the provisions Reeves cites do not apply to this claim.  For instance, section 1692d prohibits harassment or abuse in the collection of a debt.  <u>See</u> 15 U.S.C. § 1692d ("A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.").  The section says nothing about using false names or failing to disclose the true identity of the debt collector.  Nor does § 1692f apply.  This section prohibits "unfair or unconscionable means to collect or attempt to collect any debt."  The failure to disclose two participants in a debt collection scheme simply does not rise to the level of unfair or unconscionable.  Reeves has not established any violation of §§ 1692d or 1692f.

On the other hand, § 1692e(14) does apply to the allegations.  This section defines a

"false, deceptive, or misleading representation" to include "[t]he use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization."   15 U.S.C. § 1692e(14).   Neither party cites any caselaw interpreting this section.   Defendants argue that the letters properly disclosed only New Horizons, a d/b/a of Tighorn, and MCB.   According to Defendants, there "would be no need for Total Card to list its name because it was not collecting debts but merely acting as an agent for" MCB.   (Defs.' Reply Mem. at 11.)

The Eighth Circuit has held that the use of an alternate name for a debt collector, even though that name was a registered alternate name for the company, violated § 1692e(14). Lester E. Cox Med. Center v. Huntsman, 408 F.3d 989, 992 (8th Cir. 2005).   Similarly, in a case involving the use of an alias in a caller-identification device, this Court found that the plaintiffs had stated a claim for a violation of § 1692e(14).   Knoll v. Allied Interstate, Inc., 502 F. Supp. 2d 943, 948 (D. Minn. 2007) (Magnuson, J.).   In the absence of any contrary authority, the record before the Court shows a question of fact as to whether Defendants violated § 1692e(14).

c.      **Representation regarding reporting debt as paid**

The solicitation letters attempted to persuade Reeves to enroll in the program by promising that if he did, "the full amount of your old debt will be reported to the credit bureau as paid" and "we will report your debt as paid."   Because debt information more than seven years old, with few exceptions, is not included on a credit report, Reeves contends that these statements were illusory promises that Defendants did not intend to carry out.   At the

12

hearing, Defendants admitted that there is no evidence in the record to support the statement that the debt would be reported as paid.  In other words, Defendants admit that they did not intend to report any debt as paid to any credit reporting agency.

In arguing that summary judgment is nonetheless appropriate on this claim, Defendants rely on Hollis v. Northland Group, Inc., Civ. No. 08-4895, 2009 WL 250075 (D. Minn. Feb. 2, 2009) (Frank, J.)   In this case, the debt collector threatened to report uncollectible debt to a credit reporting agency.  Judge Frank determined that this statement was not actionable, because the credit-reporting statute does not prohibit a debt collector from reporting uncollectible debt to a credit reporting agency, but rather only prohibits the agency from including uncollectible debt in a consumer's credit report.  Id. at *3.  There was no discussion in that case as to whether the debt collector actually intended to make the report.

The situation here is different from the situation in Hollis, however.  Here, Defendants did not threaten to report Reeves's old debt to a credit reporting agency if he did not enroll in the New Horizons program.  Rather, they attempted to entice him to enroll in the program by making promises on which they had no intention of following through.

Section 1692e(5) prohibits "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken."  15 U.S.C. § 1692e(5) (emphasis added).  The Eleventh Circuit Court of Appeals faced a situation similar to the instant case in Jeter v. Credit Bureau, 760 F.2d 1168 (11th Cir. 1985).  In Jeter, the debt collector's communication threatend that the debt collector would recommend that its client take legal action against the consumer if

the consumer did not respond within 5 days.  Id. at 1171.  The consumer did not respond to the communication, and no legal action was taken.  In her lawsuit, the consumer argued that the debt collector did not intend to recommend legal action and thus that the communication violated subsection 5.  The debt collector presented the statement of a corporate officer that the debt collector did in fact intend to recommend legal action.  Id. at 1176.  Despite this, the court of appeals found that summary judgment was not appropriate, because the officer's statement was "not by any means dispositive with regard to whether [the debt collector] intended to recommend legal action upon the expiration of the five-day period."  Id.  The court determined that a "reasonable jury could read the letter as a threat to recommend legal action immediately upon the expiration of the five-day period or shortly thereafter."  Id.  Because the fact that legal action was not taken contradicted the debt collector's assertion that it intended to recommend legal action, the court of appeals found that a jury must resolve the question of the debt collector's intent to take the action threatened in the letters for the purposes of subsection 5.  Id.

Here, Defendants' position is even less strong than the debt collector's position in Jeter.  Defendants admit that there is no evidence that they intended to take the action mentioned in the letter.  Thus, in essence, Defendants admit that there is at least a question of fact as to whether they violated § 1692e(5).  Summary judgment is therefore not appropriate.

       d.    **Representation that full amount of debt remained due**

There is no doubt that a debt collector's threat to file a lawsuit to collect a time-barred

debt is a deceptive practice that violates the FDCPA.  See Freyermuth v. Credit Bureau Servs., Inc., 248 F.3d 767, 771 (8th Cir. 2001).  However, in the absence of a threat of litigation, the attempt to collect a legally uncollectible debt does not violate the FDCPA.  Id. The question in this case is whether Reeves's debt "remained due;" if it did not, then Defendants' statement to the contrary in the solicitation letters is false and in violation of the FDCPA.  Defendants argue that the "remain due" statement must be taken in light of the fact that the letters "clearly state on the second page that 'if your present debt is outside the applicable statute of limitations, then a lawsuit cannot be filed to collect this debt.'" (Def.'s Supp. Mem. at 19.)  The font size on the second page of the letters is so small, however, that it cannot fairly be said to "clearly state" anything.

It is true that Reeves's debt is still outstanding, and thus technically remains due, even if it is outside the statute of limitations for an legal action to collect it.  See Davis v. Mills, 194 U.S. 451, 456 (1904) ("[A] statute of limitations cannot take away an existing right, but only remedies . . . .").  Defendants are therefore correct that this statement is not false and thus does not violate the FDCPA.  Defendants are entitled to summary judgment on this claim.

5.   DTPA

Defendants also seek summary judgment on Reeves's claim under Minnesota's DTPA.  By its terms, the DTPA applies to goods and services.  See, e.g., Minn. Stat. § 325D.44, subd. 1(1) (deceptive trade practice occurs, inter alia, in "pass[ing] off goods or services as those of a another").  The collection of a debt does not involve goods or services.

15

<u>Thinesen v. JBC Legal Group, P.C.</u>, No. Civ. 05-518, 2005 WL 2346991, at *6 (D. Minn. Sept. 26, 2005) (Frank, J.).  It therefore falls outside the ambit of the DTPA.  This claim is dismissed.

      6.    <u>Conclusion</u>

Defendants have established that summary judgment is appropriate as to Reeves's FDCPA claim regarding the "remain due" language and his claims under the DTPA.  There are genuine issues of material facts remaining on the other FDCPA claims, however, and thus summary judgment is denied as to those claims.

**C.    Motion for Class Certification**

A plaintiff seeking to certify a class must initially establish that: (1) the class is so numerous that joinder of all the members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).  If Rule 23(a)'s threshold criteria are met, the plaintiff must then show that the action is maintainable under one of the subsections of Rule 23(b).  Reeves seeks to maintain a class under either subsection (b)(2) or (b)(3), and the Court will discuss Rule 23(b)'s requirements in more detail below.

Although the Court does not consider the merits of Reeves's claims in assessing a motion for class certification, Reeves bears the burden of establishing each prerequisite element to certification.  <u>See</u> <u>General Tel. Co. v. Falcon</u>, 457 U.S. 147, 161 (1982).  In rigorously analyzing whether Reeves has met his burden, the Court "may look past the

pleadings . . . [to] understand the claims, defenses, relevant facts, and applicable substantive law. . ." Thompson v. Am. Tobacco Co., Inc., 189 F.R.D. 544, 549 (D. Minn. 1999) (quoting Castano v. Am. Tobacco Co., 84 F.3d 734, 744 (5th Cir. 1996)); Coopers & Lybrand v. Livesay, 437 U.S. 463, 469 (1978) (noting that analysis of a class certification motion "generally involves considerations that are enmeshed in the factual and legal issues comprising plaintiff's cause of action"). Ultimately, because of the fact-specific quality of the analysis, the Court exercises broad discretion in determining whether or not to certify a particular class under Rule 23. See Reiter v. Sonotone Corp., 442 U.S. 330, 345 (1979); Coleman v. Watt, 40 F.3d 255, 259 (8th Cir. 1994); Parkhill v. Minn. Mutual Life Ins. Co., 188 F.R.D. 332, 337 (D. Minn. 1999).

Reeves seeks to maintain a class consisting of "all consumers in the State of Minnesota who have been mailed letters similar to Exhibits 1, 2, 3, 4, and 5 [of the Third Amended Complaint] within one (1) year from the date of the filing of this action." (Class Cert. Supp. Mem. at 2.) Defendants argue that Reeves cannot satisfy any of Rule 23's requirements.

Defendants first argue that Reeves's class definition is inadequate. They point out that, under Reeves's definition, Minnesota residents who received letters from other debt collection companies operating programs similar to the New Horizons program would be included. They also note that a consumer may maintain a claim only if he or she received an allegedly offending letter, but the class is defined as those who were mailed letters, not those who actually received letters.

17

Defendants also contend that the class as written does not restrict the class to consumers who suffered resulting confusion or harm. (Defs.' Mem. Opp'n Class Cert. at 8.) But the FDCPA is "a strict liability statute." Owens v. Hellmuth & Johnson, PLLC, 550 F. Supp. 2d 1060, 1069 (D. Minn. 2008) (Kyle, J.). Thus, it does not matter whether any particular consumer was confused; if the letters violate the FDCPA, Defendants are liable.

Defendants are correct that the class as defined by Reeves is not specific enough. Their objections to the class definition, however, do not mean that a class cannot be certified at all. Rather, the Court can amend the class definition to conform it to Defendants' objections. In light of those objections, an appropriate amended class definition is:

> All consumers in the State of Minnesota who received letters advertising the New Horizons credit card program, identical or similar to the letters attached as Exhibits 1, 2, 3, 4, and 5 of the Third Amended Complaint, within one year of the filing of this action.

1.    Rule 23(a)

a.    **Numerosity**

A class may not be certified unless the proposed class is so large that joinder of all class members would be "impracticable." Fed. R. Civ. P. 23(a)(1). There is no specific number of class members that will automatically warrant class certification. In re Workers Compensation, 130 F.R.D. 99, 104 (D. Minn. 1990) (Rosenbaum, J.). Reeves contends that more than 6,000 Minnesota citizens received letters similar to those he received. (Class Cert. Supp. Mem. at 13.)

Defendants dispute numerosity, contending that Reeves's proposed class definition

18

is too vague to allow a determination on numerosity and that the Court should grant the

Motion for Summary Judgment and dismiss the case rather than certifying the class. Having

determined that some of Reeves's claims survive summary judgment, however, Defendants'

argument is moot. Moreover, the amended class definition disposes of Defendants' concern

regarding vagueness.

Defendants also argue that because Reeves is the only person out of the 6,000 who

received this mailing who chose to file suit, he cannot meet the numerosity requirement.

This argument is not applicable to the numerosity inquiry, however. Moreover, each

individual class member's damages are likely small, and although the FDCPA provides for

statutory damages and attorney's fees, the relatively slight harm incurred individually means

that class members are less likely to bring lawsuits to vindicate their rights. Reeves has

satisfied the numerosity prong of the class certification inquiry.

### b. **Commonality**

Rule 23 does not require that all questions of law and fact are common to every

member of the proposed class. Rather, the Rule requires only that common questions exist.

The presence of differing legal inquiries and factual discrepancies will not preclude class

certification.[2] <u>Dirks v. Clayton Brokerage Co. of St. Louis, Inc.</u>, 105 F.R.D. 125, 131 (D.

Minn. 1985) (MacLaughlin, J.). Defendants again contend that the faulty class definition and

their Motion for Summary Judgment means that Reeves's claims are not common to those

---

[2] The commonality inquiry is different from the question whether common questions predominate, which will be addressed in the Rule 23(b) analysis, <u>infra</u>.

of the class.  But these arguments do not address whether the claims are in fact common.  All members of the class as narrowed have the same claims under the FDCPA: that Defendants falsely claimed to be licensed, that Defendants did not intend to take the actions mentioned in the mailings, and that Defendants failed to identify themselves in their mailings.  Thus, Reeves has succeeded in showing that common questions exist for the purposes of class certification.

       c.     **Typicality**

In order to establish that the claims of the named Plaintiff are typical of the claims of the class, the named Plaintiff must demonstrate that he has the same or similar grievances as the members of the class.  In re Workers Compensation, 130 F.R.D. at 105; Tate v. Weyerhauser Co., 723 F.2d 598, 608 (8th Cir. 1983).  Perfect identity of claims is not required.  In re Wirebound Boxes Antitrust Litig., 128 F.R.D. 268, 270 (D. Minn. 1989) (Murphy, J.)  A "strong similarity" between the legal theories of Plaintiff and those of the class members will satisfy the typicality requirement.  In re Potash Antitrust Litig., 159 F.R.D. 682, 690 (D. Minn. 1995) (Kyle, J.).

Defendants attack Reeves's typicality on two grounds.  First, they claim that Reeves is not typical because he cannot represent class members who did not receive the New Horizons mailing.  Given the narrowed class definition, this objection is moot.

Next, Defendants contend that Reeves is not typical because some class members may not have acted as Reeves acted when he received the mailings—they may have thrown the letters in the garbage, or read them but not acted on them, and so on.  But as noted above, the

FDCPA imposes strict liability.  As long as a consumer received a mailing that violated the FDCPA, that consumer has a claim no matter what he or she did in response to that mailing. Thus, the differences in each putative class member's reaction to the mailing is not relevant to any inquiry and cannot defeat typicality.

Reeves has sufficiently established that his claims are typical and class certification is appropriate under Rule 23(a)(3).

d.   **Adequacy**

Reeves must next demonstrate that he "will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  To do so, he must show that: (1) his counsel is competent to pursue the action; and (2) his interests are not antagonistic to the interests of the class.  In re Workers Compensation, 130 F.R.D. at 107. Defendants' arguments with respect to the second prong are for the most part restatements of their arguments with respect to typicality and commonality.  Those arguments are discussed previously and warrant no further discussion here.

Defendants also contend that class counsel is not competent.  This case presents the unique circumstance of the initial class counsel's suspension from the practice of law.  That suspension took effect during the pendency of the briefing on the Motion for Class Certification.  Clearly, initial counsel Thomas Lyons, Jr., is not competent to pursue this action on behalf of the class.  Defendants also contend that because substitute class counsel, Thomas Lyons, Sr., has had no involvement in the case up to this point, he is not adequate class counsel.  Plaintiff's Motion for Class Certification was filed months before Mr. Lyons,

21

Jr., was suspended.

The Court finds that Trista Roy, the junior lawyer on the case, is sufficient for the continuity of representation about which Defendants express concern. Rule 23(g) requires the court to consider "the work counsel has done in identifying or investigating the potential claims in the action." Fed. R. Civ. P. 23(g)(1)(A)(i). The reply brief outlines Ms. Roy's extensive contributions to the prosecution of this action, and Defendants do not dispute Mr. Lyons, Sr.'s extensive experience in FDCPA class actions. The presence of these two highly qualified lawyers shows that Reeves will adequately represent the class.

Reeves satisfies the adequacy requirement, and, as such, has established all of the requirements of Rule 23(a).

2.    Rule 23(b)

Next, the Court must consider whether this action meets the requirements of one of the subsections of Rule 23(b). See Eisen v. Carlyle & Jacquelin, 417 U.S. 156, 163 (1974) (noting that class actions must meet requirements of both Rule 23(a) and Rule 23(b)). Reeves asks the Court to certify a class under either Rule 23(b)(2) or 23(b)(3).

a.    **23(b)(2)**

A Rule 23(b)(2) class is appropriate when a defendant has "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Certification under this subsection is not appropriate "where monetary relief is sought, unless such monetary relief is incidental to the requested injunctive relief or declaratory relief."

22

Glenn v. Daddy Rocks, Inc., 203 F.R.D. 425, 430 (D. Minn. 2001) (Doty, J.).

Although Reeves has requested injunctive relief, he has also alleged that Defendants are no longer pursuing the New Horizons scheme.  He argues that declaratory relief is available under the DTPA, but the Court has determined that the DTPA claims may not proceed.  No injunctive or declaratory relief is available to Reeves and thus certification under 23(b)(2) is not appropriate.

        b.     **23(b)(3)**

Rule 23(b)(3) requires that: (1) questions of law or fact common to the members of the class predominate over any questions affecting individual members; and (2) a class action is the superior method of adjudicating the controversy.   In making this inquiry, the Rule directs the Court to consider

    (A)    the class members' interests in individually controlling the prosecution or defense of separate actions;

    (B)    the extent and nature of any litigation concerning the controversy already begun by or against class members;

    (C)    the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

    (D)    the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

The claims remaining in the case are that the New Horizons mailings violated the FDCPA because they contained false and misleading statements.  These claims are common to all class members, and certainly predominate because they are the only claims the class

23

members can bring.  The arguments Defendants raise against predominance, such as each class member's individual reaction to the mailings, are not relevant to the question of whether the mailings violated § 1692e.  Defendants' arguments on the (b)(3) factors are without merit.  The class will be certified under 23(b)(3).

## E.    Class Counsel

Rule 23(g) requires the Court to appoint class counsel if a class is certified and sets forth several factors the Court is required to and allowed to consider in making that appointment.   The Court must consider putative class counsel's work, experience, knowledge, and resources, and also whether counsel will "fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1), (4).

As discussed previously, Ms. Roy and Mr. Lyons, Sr., have ably prosecuted this case thus far.  In particular, the submissions in support of the Motion for Class Certification and in opposition to the Motion for Summary Judgment, show that putative class counsel are knowledgeable, experienced, and have the resources to commit to representing the class. Counsel have worked to identify and investigate potential claims.  Finally, the Court finds that counsel will fairly and adequately represent the interests of the class.  The Court therefore finds that the requirements of Rule 23(g) are satisfied, and appoints the Consumer Justice Center, Thomas Lyons, Sr., and Trista Roy to be class counsel.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED that**:

1.    Defendants' Motion for Summary Judgment (Docket No. 111) is **GRANTED**

**in part** and **DENIED in part**;

2.    Defendants' Motion for Leave to File (Docket No. 115) is **DENIED** as set forth above;

3.    Counts II and III of the Third Amended Complaint are **DISMISSED with prejudice**;

4.    Plaintiff's Motion for Class Certification (Docket No. 95) is **GRANTED**;

5.    This action is certified as a class action pursuant to Fed. R. Civ. P. 23(b)(3), with respect to the claim remaining in the case, including liability and damages, for a class consisting of:

> All consumers in the State of Minnesota who received letters advertising the New Horizons credit card program, identical or similar to the letters attached as Exhibits 1, 2, 3, 4, and 5 of the Third Amended Complaint, within one year of the filing of this action;

6.    Pursuant to Fed. R. Civ. P. 23(c)(2), the parties are directed to meet and confer regarding class notice and to submit proposed class notice to the Court by Friday, June 4, 2010; and

7.    Pursuant to Fed. R. Civ. P. 23(g), the Consumer Justice Center, P.A., Thomas Lyons, Sr., and Trista Roy are hereby appointed class counsel.

Dated: <u>Tuesday, May 18, 2010</u>

<u>*s/ Paul A. Magnuson*</u>
Paul A. Magnuson
United States District Court Judge